

**FILED**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUN 1 9 2008    **NR**

Jun 19, 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

BankFirst, a South Dakota corporation,

               Plaintiff,

vs.

Jill L. McGuire,

               Defendant.

Ca

**08CV 3532
JUDGE CASTILLO
MAGISTRATE JUDGE VALDEZ**

## COMPLAINT

BankFirst ("Plaintiff"), as and for its Complaint herein, states and alleges as follows:

### INTRODUCTION

1.    In 2006, Plaintiff extended a loan to Jill L. McGuire (the "Borrower") to finance the Borrower's construction of a residence on real property located in Lehigh Acres, Florida.

2.    The Borrower defaulted under the Plaintiff's loan by: (1) failing to repay the amounts advanced under the loan to the Plaintiff on the loan's maturity date, and (2) failing to perform any construction under the project before the required completion date provided by the parties' construction loan agreement.

3.    The Borrower has failed to cure their default. Plaintiff now brings this action seeking a money judgment against the Borrower for all amounts due under the loan.

## PARTIES

4.     Plaintiff is a South Dakota corporation with a principal place of business located at 225 South Sixth Street, Suite 2900, Minneapolis, Minnesota 55402.  Plaintiff is a citizen of South Dakota and Minnesota.

5.     Defendant Jill L. McGuire is an individual, and upon information and belief, resides at 1406 Blackburn Street, Wheaton, Illinois 60187.  She is a citizen of Illinois.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332(a)(1), as this is an action between citizens of different States and the matter in controversy exceeds $75,000, exclusive of interest and costs.  This Court has personal jurisdiction over the Defendant because she is a citizen of Illinois, and resides in this District.

7.     Venue is appropriate under 28 U.S.C. § 1391(a)(1) because the Defendant is a citizen of Illinois, and resides in this District.

## THE BORROWER'S CONTRACT TO BUILD
## A RESIDENCE ON REAL PROPERTY

8.     On or around December 30, 2005, the Borrower entered into a Contract for Sale and Purchase ("Purchase Agreement") with Real Estate Solutions & Investments, LLC, an Arizona limited liability company ("Seller"), to purchase certain real estate located in Florida.  The real estate is located at 101 Terry Avenue North, Lehigh Acres, Florida 33971, and legally described as follows: Lot(s) 6, Block 37, Unit 7, Northeast ½ and South ½ of Section 26, Township 44 South, Range 26 East, LEHIGH ACRES, according to the plat thereof, recorded in Plat Book 15, Pages(s) 75, of the Public Records of Lee County, Florida (the "Property").

2

9.    Upon information and belief, Defendant Jill McGuire's son, Michael Yamamoto, is a member of Real Estate Solutions & Investments, LLC.

10.    Under the Purchase Agreement, the Borrower agreed to purchase, and the Seller agreed to sell, the Property for the purchase price of $60,000.00. The terms of the Purchase Agreement provided that the sale was contingent on the Borrower obtaining approval of a mortgage loan to finance the purchase price.

11.    On or around December 30, 2005, the Borrower entered into a contract ("Builder Agreement") with Richard Leli Homes, Inc. d/b/a RL Homes, a Florida corporation ("Builder"). Under the terms of the Builder Agreement, the Builder agreed to construct a residence on the real property at a cost to the Borrower of $238,500.00. Under Paragraph 2 of the Builder Agreement, the Builder agreed to use its best efforts to substantially complete the construction of the residence within 270 days from the date of commencement of construction.

12.    On approximately May 26, 2006, the Borrowers acquired the Property from the Seller by Warranty Deed.

### THE PLAINTIFF'S LOAN TRANSACTION WITH THE BORROWER

#### The Construction Loan Agreement

13.    The Borrower executed a construction loan agreement dated March 13, 2006 with the Plaintiff ("Loan Agreement"). Under the terms of the Loan Agreement, Plaintiff agreed to make periodic loan advances to the Borrower up to the total principal amount of $299,700.00 (the "Loan"), subject to the terms and conditions of the Loan Agreement. In exchange for the Loan, the Borrower agreed, among other things: (i) to timely repay all

3

amounts due under the Loan, and (ii) to construct a one-to-four family dwelling on the Property (the "Project"). Repayment of the Loan was secured by a first-priority mortgage against the Property. A true and correct copy of the Loan Agreement is attached to this Complaint as Exhibit A.

14.    Paragraph 1 of the Loan Agreement provided that all construction under the Project would be fully complete by a completion date of June 1, 2007 (the "Completion Date"). Further, under Paragraph 13 of the Loan Agreement, the Borrower agreed to cause the Project's development and construction to be done diligently, continuously, and on-time.

15.    Under Paragraph 12 of the Loan Agreement, the Borrower agreed that the Project's budget submitted to Plaintiff "accurately and completely reflects all costs which [Borrower] reasonably expect[s] to incur in the acquisition, development, construction, equipping and furnishing of the Property and the Project." The Borrower further agreed that she "will prevent the Project's actual cost from exceeding the Project's budgeted cost."

16.    Under Paragraph 14 of the Loan Agreement, any of the following, among others, constitutes a default under the Loan Agreement:

(a)    The Borrower's failure to make any payments due under the Loan;

(b)    The Borrower's failure to perform any condition or keep any promise or covenant contained in the Loan Agreement;

(c)    A default occurs under any other agreement the Borrower has with Plaintiff;

(d)    A default under any other term of any other loan document the Borrower has with Plaintiff;

(e)    The Project's general contractor becomes insolvent; or

(f)    Construction for the Project is delayed or discontinued for 10 or more continuous days so that construction may not be completed on or before the Completion Date.

4

17.    Upon the occurrence of a default under the Loan Agreement, Paragraph 15 of the Loan Agreement allows Plaintiff to accelerate the loan so that all amounts advanced under the Loan are immediately due and owing. In addition, upon a default, the Loan Agreement provides that Plaintiff may terminate the Borrower's right to obtain advances under the Loan and may refuse to make further extensions of credit.

18.    Paragraph 15 of the Loan Agreement provides that, upon a default, Plaintiff may advance funds to complete the Project in its sole discretion. Paragraph 15 further provides that, upon a default, Plaintiff may discontinue completing the Project at any time without liability.

19.    Under Paragraph 16 of the Loan Agreement, upon Borrower's default, Borrower agreed to pay all expenses of Plaintiff's collection, enforcement, or protection of its rights and remedies under the Loan Agreement, including but not limited to, attorneys' fees, court costs and other legal expenses. Pursuant to Paragraph 16 of the Loan Agreement, these expenses will bear interest from the date of payment until paid in full.

## The Promissory Note

20.    The Borrower executed and delivered to Plaintiff a promissory note dated May 26, 2006, in the original principal amount of $299,700.00 ("Note"). A true and correct copy of the Note is attached to this Complaint as Exhibit B.

21.    Under the terms of the Note, Borrower unconditionally promised to repay to Plaintiff all amounts advanced under the Loan, plus interest from the date of disbursement. Pursuant to the Note, the Borrower promised to make monthly installment payments of interest under the Loan beginning July 1, 2006, and to pay the entire amount of principal due

under the Loan and all unpaid accrued interest by no later than June 1, 2007 (the "Maturity Date").

22.    Pursuant to paragraph 3(A) of the Note, Plaintiff is entitled to an increased interest rate following maturity of the Note.

23.    Pursuant to paragraph 5(A) of the Note, Plaintiff is entitled to a five percent late charge if any payment is more than fifteen days late.

24.    Paragraph 11 of the Note identifies each of the following, among other events, as a default under the Note:  (A) Borrower's failure to make a payment in full when due; (B) Borrower's failure to perform any condition or to keep any promise or covenant of the Note; and (C) a default on any other term of any other loan document the Borrower has with Plaintiff.

25.    Paragraph 14 of the Note allows Plaintiff, upon default, to accelerate the loan and use any and all remedies available under state or federal law or in any instrument securing the Note.

26.    Under paragraph 15 of the Note, upon Borrower's default Borrower shall pay all expenses of Plaintiff's collection, enforcement, or protection of Plaintiff's rights and remedies, including but not limited to, attorneys' fees, court costs and other legal expenses. Pursuant to paragraph 15 of the Note, these expenses will bear interest from the date of payment until paid in full.

## THE PLAINTIFF'S LOAN ADVANCES TO THE BORROWER AND THE BUILDER'S INSOLVENCY

27.    On and after the closing date for the Loan, the Plaintiff made several advances to the Borrower as provided by the Note and the Loan Agreement.  During the term of the

Loan, Plaintiff advanced a total of $125,163.57 to the Borrower, which financed, among other things, the Borrower's acquisition of the Property and also interest and other payments required to be paid by the Borrower under the Note and Loan Agreement.

28.    Upon information and belief, contrary to the terms of the Builder Agreement and the Loan Agreement, the Builder did not perform any construction on the Property during the term of the Loan.

29.    The Builder's failure to perform construction on the Property during the term of the Loan constituted a default under Paragraph 14 of the Loan Agreement and Paragraph 11 of the Note.

30.    Upon information and belief, in approximately November 2006, the Builder became insolvent and ceased all operations relating to the Project.

31.    The Builder's insolvency and failure to complete the Project prior to the Completion Date constituted a default under Paragraph 14 of the Loan Agreement and Paragraph 11 of the Note.

32.    Upon information and belief, little or no improvements were ever made to the Property.

## THE BORROWERS' FAILURE TO REPAY THE LOAN
## ON THE MATURITY DATE

33.    On June 1, 2007, the Loan matured and the Borrower was required to immediately repay all amounts Plaintiff advanced to the Borrower under the Note, plus all accrued and unpaid interest.

34.   Borrower failed and refused to pay Plaintiff all amounts due and owing under the Note.  Borrower's failure and refusal to pay amounts due to Plaintiff constitutes a default under Paragraph 11 of the Note and Paragraph 14 of the Loan Agreement.

35.   On June 12, 2007, Plaintiff sent the Borrower written notice of default.  A true and correct copy of this notice is attached to this Complaint as <u>Exhibit C</u>.

36.   On March 7, 2008, Plaintiff sent the Borrower another written notice that the Note had matured.  A true and correct copy of this notice is attached to this Complaint as <u>Exhibit D</u>.

37.   The defaults have not been cured.

38.   There is due and owing under the Note (as of March 4, 2008) principal in the amount of $125,163.57, and accrued interest and late fees in the amount of $11,159.83.  Interest continues to accrue until the indebtedness is paid in full.

39.   Plaintiff is incurring costs and attorneys' fees in enforcing its remedies under the Note and related loan documents.

**<u>COUNT I</u>**
**<u>Breach of Contract /</u>**
**<u>Judgment—the Note</u>**

40.   Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 39.

41.   Borrower executed the Note, promising to pay all sums due and owing as described in the Note.

42.   The Note is a valid enforceable contract.

43.   The maturity date of the Note was June 1, 2007.

44.   Full payment of the Note was due on the maturity date.

8

45.    Borrower has failed to pay the Note in full.

46.    Failure to pay the Note when due is a default of the Note.

47.    Borrower has breached the terms of a valid enforceable contract.

48.    Borrower agreed to pay all costs of collection, including reasonable attorneys' fees, in enforcing the Note. Plaintiff has incurred, and continues to incur, these costs.

49.    There is due and owing under the Note (as of March 4, 2008) principal in the amount of $125,163.57, and accrued interest and late fees in the amount of $11,159.83. Interest continues to accrue until the indebtedness is paid in full.

50.    Plaintiff is entitled to judgment against Borrower for the full amount due and owing under the Note, plus attorneys' fees and costs.

## COUNT II
### Unjust Enrichment/Restitution

51.    Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 50.

52.    Pursuant to the Note, Plaintiff provided the Borrower with a benefit in the form of a substantial amount of funds.

53.    The benefit provided to the Borrower has been to the determinant of Plaintiff as the Borrower has not repaid Plaintiff for the funds provided to Borrower.

54.    The retention of the benefit by the Borrower violates the principals of justice, equity, and good conscience.

55.    Borrower has profited and been unjustly enriched by receiving the benefit of the funds without repaying Plaintiff as promised. It would be unfair and inequitable to allow Borrower to retain said benefit.

56.    Plaintiff is entitled to be compensated for the loss it has incurred as a result of providing funds to the Borrower and the Borrower's failure to repay the funds as promised.

## COUNT III
## Money Had and Received

57.    Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 56.

58.    Plaintiff provided substantial funds to the Borrower which belongs to the Plaintiff.

59.    The Borrower promised to repay the Plaintiff for the funds provided to the Borrowers.

60.    In equity and good conscience, the funds belong to Plaintiff.

61.    Plaintiff is entitled to have the funds returned to Plaintiff.

## COUNT IV
## Quantum Meruit

62.    Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 61.

63.    Under the express terms of a contract, Plaintiff provided substantial funds to the Borrower.

64.    The funds provided were intended to, and did, provide the Borrower with a direct benefit.

65.    Both Borrower and Plaintiff had an expectation that the Borrower would repay Plaintiff the funds provided to Borrower.

## CONCLUSION

WHEREFORE, based on the foregoing, Plaintiff prays for judgment as follows:

1. Determining that the Note is a valid instrument enforceable in accordance with its terms.

2. For a judgment against Jill L. McGuire, in excess of $136,323.40, plus all of Plaintiff's costs and reasonable attorneys' fees.

3. For such other and further relief as the Court deems just and equitable.

Dated: June 19, 2008

By: _____

Thomas R. Weiler, #06184955
NORTON, MANCINI & WEILER
111 W. Washington Street, Suite 835
Chicago, IL 60602
Telephone:    312.807.4999
Facsimile:    312.807.4998
tweiler@nortonmancini.com

LOCAL COUNSEL FOR PLAINTIFF
BANKFIRST

David E. Runck, #0289954
Jeffrey A. Scott, #0339416
FAFINSKI MARK & JOHNSON, P.A.
Flagship Corporate Center
775 Prairie Center Drive, Suite 400
Eden Prairie, Minnesota 55344
Telephone:    952.995.9500
Facsimile:    952.995.9577
David.Runck@fmjlaw.com
Jeffrey.Scott@fmjlaw.com

ATTORNEYS FOR PLAINTIFF BANKFIRST

# Exhibit A

| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | AGREEMENT DATE | INITIALS |
|---|---|---|---|---|
| 90082 | Jill L McGuire | | 05/26/06 | BCJ |
| NOTE AMOUNT | INDEX (w/Margin) | RATE | MATURITY DATE | LOAN PURPOSE |
| $299,700.00 | Wall Street Journal Prime plus 1.000% | 9.000% | 06/01/07 | Consumer |
| | | Creditor Use Only | | |

## CONSTRUCTION LOAN AGREEMENT
### Consumer Construction Loan

DATE AND PARTIES. The date of this Construction Loan Agreement (Agreement) is May 26, 2006. The parties and their addresses are:

**CONSTRUCTION LENDER:**
BANKFIRST
9855 West 78th Street Suite 170
Eden Prairie, Minnesota 55344

**BORROWER:**
JILL L MCGUIRE
1406 Blackburn Street
Wheaton, Illinois 60187

**OWNER:**
JILL L MCGUIRE
1406 Blackburn Street
Wheaton, Illinois 60187

1. **DEFINITIONS.** All references to dollar amounts refer to amounts in lawful money of the United States of America. For the purposes of this Agreement, the following words will be defined as indicated.

A. **Agreement.** This Agreement is this Construction Loan Agreement and any attached exhibits and schedules, and their amendments.

B. **Completion Date.** The Project's development and construction and the installation of all fixtures and equipment specified under the Plans and Specifications will be fully completed on the Completion Date of June 1, 2007.

C. **Construction Contract.** The Construction Contract includes all contracts between me and the Project's general contractor, and any subcontractors, laborers, material suppliers and others contributing work, equipment or materials to the Project.

D. **Construction Liens.** Construction Liens include any notices or claims created by statutes for the purpose of securing priority of payment of the price or value of labor or work performed and materials supplied in the Project's development, construction and equipping and that attaches to the Property and the Project, or any notices or claims to withhold funds related to the Loan. Construction Liens include without limitation mechanic's liens, materialmen liens, construction liens and all similar statutory liens.

E. **Construction Title Insurance Policy.** The Construction Title Insurance Policy is the ALTA Extended Coverage Loan Policy form, revised to the most recent date, and any endorsements that you require.

F. **Disbursement Schedule.** The Disbursement Schedule provides a schedule of the amounts and the dates for each Loan advance, subject to this Agreement's terms and conditions. The Disbursement Schedule is incorporated by reference into this Agreement.

G. **Improvements.** Improvements include all existing physical development of the Property, all buildings or other structures on the Property and all of the Project's future improvements and construction, except for any demolition as specified in the Plans and Specifications.

H. **Loan.** The Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction. Under the Loan, Borrower may obtain advances from you up to the total principal amount of $299,700.00, subject to this Agreement's conditions and terms.

I. **Loan Documents.** Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

J. **Plans and Specifications.** The Plans and Specifications include the Project's plans, specifications and drawings, with the certifications, any studies, data, working or shop drawings, any models, any contracts or agreements, and any changes and additions made concerning these plans, specifications, models and drawings.

K. **Project.** As set forth in the Plans and Specifications, the Project includes the initial construction of a one-to-four family dwelling, all future physical development of the Property and offsite improvements, but does not include any planned demolition.

L. **Promissory Note.** The Promissory Note includes any note or notes or other written and executed evidence of the borrower's and co-signer's promise to pay you for debts, liabilities and obligations that are extended under the Loan and that are extended under the Loan, extensions, renewals, modifications, substitutions and amendments thereto.

M. **Pronouns.** "I", "me" and "my" refers to Borrower and every person, individually or together, who signs the Promissory Note, evidencing my promise to pay you for credit extended subject to this Agreement, any riders, extensions, renewals, amendments and

Jill L McGuire
South Dakota Construction Loan Agreement
SD/4XXXrlane0093710000618702208230BY            ©1996 Bankers Systems, Inc., St. Cloud, MN ExSere™            Initials ___ 
Page 1

**EXHIBIT A**

modifications, and to Owner and every person, individually or together, who owns the Property on which the Project's development, construction and equipping will occur. "You" and "your" refers to the construction lender.

N. Property. Property includes all of the real property on which this Project will occur. The Property is located in Lee County at 101 Terry Avenue North, Lehigh Acres, Florida 33971, and is legally described as:

See attached Exhibit A

O. Security Agreement. The Security Agreement includes any agreement which creates or provides for an interest in personal property or fixtures which is used to secure payment or performance of an obligation owed to you.

P. Security Instrument. The Security Instrument includes a mortgage, deed of trust, deed to secure debt or other similar instrument that transfers an interest in real estate for the purpose of securing repayment and performance of the Loan.

Q. Title Insurance Company. Under the Loan, Safe Harbor Title will serve as the Title Insurance Company.

2. OBLIGATORY LOAN ADVANCES. In consideration of my agreement to construct and complete the improvements described herein, you are obligated to open the Loan and to disburse advances up to the total principal amount of $289,700.00, so long as I have complied with all conditions precedent required for each advance.

3. TITLE. Owner has or will acquire a good and marketable fee simple ownership interest in the Property.

4. TERM. This Agreement will remain effective until I fully perform all of the Loan's debts, liabilities and obligations and you and this Agreement in writing.

5. ARCHITECTS AND GENERAL CONTRACTOR. The Project's architects and professional engineers exclude your consulting architect. You will choose your consulting architect, an independent architect, professional engineer or other construction consultant to periodically inspect the Project's progress and quality to protect your interests exclusively.

6. SECURITY. I hereby transfer, assign and grant to you all of my right, title and interest in and to all of the following property as security for the Loan:

A. Utility Deposits. All amounts deposited with any public or private utility for utilities installation or service on or for the Property.

B. Fixtures. All construction materials, machinery and appliances acquired with Loan reserves or proceeds.

C. Plans and Specifications. The Project's Plans and Specifications.

D. Account. Any deposit account created under this Agreement and on any amounts placed in such account.

E. Construction Contract. The Construction Contract and the General Contractor's Consent and Acknowledgment. The General Contractor's Consent and Acknowledgment includes the Project general contractor's consent to and acknowledgment of the terms and conditions of this Agreement; representations about the Construction Contract, the Plans and Specifications, and the Project's budget; the general contractor's agreement to continue to perform general contractor's Construction Contract with you after my default; subordination to you of all claims, liens and encumbrances that general contractor has or will acquire in the Property; and agreement to other terms.

F. Architect's Contract. The contract with the Project's architect and professional engineers and the Architect's Consent and Acknowledgment, which includes the Architect's consent to and acknowledgment of the terms and conditions of this Agreement; representations about the Architect's contract, the Plans and Specifications, and the Project's budget; subordination to you of all claims, liens and encumbrances that Architect has or will acquire in the Property; the Architect's agreement to continue to perform its Architect's contract with you after my default; and agreement to other terms.

G. Other Agreements. Any other agreement which, in your sole judgment, would assist you in completing the Project should I be in default under the Loan.

H. Other Collateral. To the extent possible under state law in any and all government licenses, permits and approvals necessary for the Project. In addition, any and all other collateral described in any other Loan Document.

7. CONDITIONS PRECEDENT TO FIRST LOAN DISBURSEMENT. You will open the Loan and disburse or at your option, the Title Insurance Company disburses, the Loan's first advance only after I comply with all of the following conditions on or before May 28, 2006.

A. Other Loan Documents. I will execute the other Loan Documents and provide you with all other documents, information and warranties that you request. I will provide these in a form, a substance and with an execution acceptable to you.

B. Record Security Instrument. I will not permit any work or any materials to be furnished for the Project until you properly perfect or otherwise make effective as to third parties any security interests, assignments or other consensual liens or encumbrances.

C. Title Insurance. I will have furnished to you a title insurance commitment, interim binder or a Construction Title Insurance Policy, acceptable to you, from the Title Insurance Company. I will also furnish any title insurance statements and other instruction or documents required by Title Insurance Company for the issuance of the title insurance commitments, interim binders and Construction Title Insurance Policy.

D. Builder's Risk and Casualty Insurance. I will obtain builder's risk insurance, with a coverage, a form and an amount acceptable to you and as required by the Construction Contract, insuring the improvements under construction against loss or damage by fire or other casualty. I will also provide flood insurance and earthquake insurance when required by you or by applicable law.

E. Permits; Compliance with Laws. I will furnish copies of all completed governmental building permits, approvals, consents and other licenses required for the Project's construction under the Plans and Specifications, including any offsite improvements. At your request, these copies will be certified. I also will have furnished evidence that the Project's Plans and Specifications will fully comply with all zoning and building code laws, environmental laws and any other covenants and restrictions.

F. Assignment of Contracts. I will provide you with the Architect's Consent and Acknowledgment and the General Contractor's Consent and Acknowledgment.

G. Liability Insurance. I will furnish certificates from the Project's general contractor and subcontractors that evidence workers' compensation and liability insurance, including contractual liability. In the course of Project's development, construction, and equipment and that names you as additional insured. On your request, I will obtain general public liability insurance naming you as an additional insured and in an amount acceptable to you.  My general public liability insurance policy will contain a standard non-contribution mortgagee's loss payable endorsement for you.

H. Surety Bonds. At your request, I will have furnished from a surety licensed to do business in the state where the Property is located, acceptable to you, and that names you and I as joint and several obligees, performance bonds for all contractors, labor and material payment bonds, and a completion bond. I will also arrange to have the performance and payment bonds name the Project's general contractor as the principal and you as the obligee or co-beneficiary. Each bond will be for the amount of the contract or more. I will arrange for these bonds to be executed by the same surety, unless you permit otherwise in writing. The bonds and any notice of commencement of construction will be duly recorded, when required by law, in the real property records of the county, district or parish where the Property is located.

I. Project Budget. I will obtain your approval of the Project's budget, detailing all of the costs for any acquisition, development, construction, equipping and furnishing of the Property.

J. Plans And Specifications. I will furnish a complete copy of Plans and Specifications that set forth all of the Project's improvements.

K. Additional Requirements. I will furnish any additional documents and evidence that you require.

L. Agreement Termination. You may end this Agreement on May 26, 2008 if I have not performed all of the conditions precedent to the first disbursement of Loan reserves and proceeds and begun construction of the Project on or before this date.

**8. CONDITIONS PRECEDENT TO ALL LOAN DISBURSEMENTS.** The following conditions will be complied with before you disburse , or at your option, the Title Insurance Company disburses, any Loan reserves and proceeds.

A. Construction Escrow Agreement. At your request, you and I will enter into a construction escrow agreement with the Title Insurance Company directing the Title Insurance Company, rather than you, to make Loan disbursements after I satisfy this Agreement's disbursement conditions to its satisfaction. The Title Insurance Company will determine the form of the escrow agreement. I will comply with the escrow agreement's terms and conditions to the extent they do not contradict this Agreement. I agree to pay the fees, costs and expenses that Title Insurance Company charges for its services under the construction escrow agreement.

B. Payments. I will make timely payments of any amounts due and payable under the Loan.

C. Survey. At your request, I will furnish you with a survey plat of the Property of recent date, prepared and certified by a licensed surveyor or prepared by a licensed professional engineer and certified by a licensed surveyor.

D. Inspection. At your sole discretion, you, your consulting architect or your agent will have inspected the project and have found that the project at that time reflects good quality work and materials, complies with the plan and specification and completes that construction stage. You are under no obligation to supervise, inspect or inform me of the progress of construction, and I will not rely upon you therefor. You will incur no liability or obligation to me arising out of such inspection. All your inspections and approvals are solely for your own benefit and may not be relied upon by any third party.

E. No Default Declared. I have not received written notice from you that a default under this Agreement or any of the Loan Documents has occurred.

F. No Waiver. Your acquiescence to my failure to comply with any condition of any Loan disbursement does not waive my need to comply with this condition, so you may require my compliance with this condition at any time after your acquiescence.

G. Documents Furnished. Before each disbursement of the Loan reserves and proceeds, I will furnish or cause to be furnished to you (or the Title Insurance Company when they are making the disbursements) the following documents.

(1) Application For Disbursement. I will provide you with a properly executed standard American Institute of Architect's payment request form (or another form you approve) and any supporting evidence that you require before disbursing Loan reserves and proceeds. I will only apply for a disbursement for work actually done and materials actually incorporated in the Project. My requests are my certification that all of the request's contents are true, complete and correct as of the request's date.

(2) Certification. At your request, I will have furnished to you a certification by the Project's architect or another qualified inspector acceptable to you that the Project's development, construction and equipping has complied and will continue to comply with all applicable laws.

(3) Verification Of Contracts. At your request, I will provide you a sworn statement as to the contract amounts due to the Project's architect, professional engineers, contractors and material suppliers for all of their work and labor performed, equipment and materials supplied to a reasonably current and specified date. You may require each listed person's verification before making any disbursements. If my list of all contracts that I have made for the Project has changed, then I will provide you with written statement advising you of the changes. I will provide you with a written statement advising you that no changes have occurred, when my list of all contracts has not changed.

(4) Lien Waivers and Subordinations. I will supply you with waivers or releases of Construction Liens as well as lien subordinations or disclaimers from Project fixture and equipment suppliers that satisfy your requirements and applicable law. I will also supply you with any supporting data that you request from those benefiting from the disbursement.

(5) Disbursement Requirements. I will furnish any other documentation that is requested by whomever is administering the disbursements.

(6) Title Insurance Documentation. I will furnish other documentation that the Title Insurance Company requires when it is administering the disbursements.

**9. CONDITIONS PRECEDENT TO THE FINAL LOAN DISBURSEMENT.** You or at your option, the Title Insurance Company, will make the final disbursement of the Loan reserves and proceeds, after I furnish or cause to be furnished the following to your satisfaction.

A. Certifications and Lien Waivers. After fully completing and equipping the Project, I will supply you with sworn statements, certifications and final unconditional waivers or releases of Construction Liens from the Project's general contractor, subcontractors and material



suppliers. These sworn statements, certifications and final unconditional waivers or releases will satisfy your requirements and applicable law. I will also supply you with any supporting data that you request from those benefiting from Loan disbursements.

B. Certificate of Occupancy or Completion. I will provide you with a copy of the certificate of occupancy, completion or other satisfactory written confirmation that the Project is complete and any structures are ready for occupancy. You will also receive satisfactory evidence that all utilities are available at the improvements and all connection fees are paid.

C. Title Insurance. I will provide you with the Title Insurance Company's final endorsement to the Construction Title Insurance Policy as you require at your sole discretion, and a Construction Title Insurance Policy will be issued for the face amount of the Promissory Note, free of all exceptions and objections.

D. Property Insurance Policy. I will provide you with evidence that an insurance policy has been obtained for the Property and its improvements that provides fire and extended coverage for replacement cost of the improvements, with a Lender's loss payable endorsement.

E. Taxes and Insurance. I will have made all tax and insurance deposits, if any, required by the Security Instrument.

F. As-Built Plans and Specifications. I will furnish you a full and complete certified set of "as built" Plans and Specifications.

G. All Other Requirements. I will comply with all other requirements of this Agreement.

10. RESERVES AND DEPOSITS. You may set aside and reserve Loan proceeds for Loan interest, fees and expenses, taxes and insurance. I agree that you may set aside a reserve in the sum of $12,000.00 for interest to be paid on the Loan.

A. Reserves. No interest will accrue on any reserve Loan proceeds. Disbursement of reserves is disbursement of the Loan's proceeds. You will disburse the reserves for the purpose they were set aside for, as long as I am not in default under this Agreement and the undisbursed Loan reserves and proceeds cover or exceed your estimated cost for completing the Project. You may directly pay these reserved items, reimburse me for payments I made, or reduce the reserves and increase the Loan proceeds available for disbursement.

B. Deposits. You may also require me to deposit with you amounts needed to finish the Project, including any installation of any required fixtures and equipment, when the Loan's undisbursed proceeds and reserves are less than your estimated cost for completing the Project. You make these estimates solely to protect your interests. You will provide me with a written request for a deposit with supporting documentation of your estimate, which is final and conclusive, and I will deposit this deficiency as soon as you request. You may apply the amounts that I deposit with you to cure any default or to reimburse yourself for payments that you made on my behalf.

C. Account. You may establish a non-interest bearing account for any reserved Loan proceeds and amounts I am required to deposit with you.

11. DISBURSING LOAN PROCEEDS. Disbursement of Loan reserves and proceeds will be subject to the following terms and conditions.

A. Disbursement Schedule. You will disburse the Loan reserves and proceeds to yourself for reimbursement of fees, costs and expenses that you advance for me and to me as indicated in the Disbursement Schedule and subject to the conditions pursuant under this Agreement.

B. Payments. You may make advances payable to me or jointly to me and Project's general contractor, the subcontractors or the material suppliers for amounts due under the Construction Contract. Alternatively, you may make payments for the Project's construction costs directly to any contractor, subcontractor, material supplier; this power is coupled with an interest that makes it irrevocable and survives my default. Any disbursement may be deposited into an account established by me or another payee entitled to payment under the Construction Contract. You may also pay yourself for amounts I owe you or you pay others. I will receive and hold advances made payable to me in trust to be applied first to paying the cost of improvements before any other purpose.

C. Fees and Expenses. I will pay all fees, costs and expenses relating to the Loan's closing before or at the time of the first disbursement of Loan reserves and proceeds or at another time that you specify. I may pay these fees and expenses in cash by a cashiers check or request that the amount due for these fees and expenses be disbursed to you from the Loan's proceeds. Any fees, costs and expenses that you advance or incur on my behalf become a part of the Loan's debt and secured by the Property, even when these amounts and the Loan disbursements exceed the face amount of the Note.

D. Your Right to Advance Funds. You may (but are not required to) advance amounts to cure any default and these advances will become a part of the Loan's debt and secured by the Property, even when these amounts and the Loan disbursements exceed the face amount of the Note.

12. WARRANTIES AND REPRESENTATIONS. I have the right and authority to enter into this Agreement. The execution and delivery of this Agreement will not violate any agreement governing me or to which I am a party. I make to you the following additional warranties and representations which will continue as long as this Agreement is in effect.

A. Ownership or Lease of Property. I have the power and authority to own, develop, construct and equip the Property.

B. Validity. The execution and performance of this Agreement and other Loan Documents is not and will not cause a default under any other agreement binding or affecting me, or a violation of any law or court order that may affect the Property or the Property's planned usage. I represent and warrant that the copy of the Project architect's contract and the Construction Contract that I provide you are true, correct and complete copies and that they are not subject to any claim, setoff or encumbrance.

C. Legal Assurances. I am not in violation of any law or any order from a court or any other type of governmental unit that may affect my ability to perform this Agreement or that may affect the validity or priority of your lien on the Property.

No lawsuits or other proceedings are pending or threatened against me, the Project's general contractor or the Property that may adversely affect your lien on the Property, my ability to perform this Agreement or the Construction Contracts or any leases required under the Loan, except those already disclosed to and acknowledged by you in writing.

D. Accuracy of Information. All financial statements, other information or certifications furnished by me to you are true, complete and correct as of the date made, and do not misstate or omit any fact necessary to avoid being misleading.

E. Project Budget. The Project's budget that I submitted to you accurately and completely reflects all costs which I reasonably expect to incur in the acquisition, development, construction, equipping and furnishing of the Property and the Project. I will prevent the Project's actual cost from exceeding the Project's budgeted cost.



F. **Environmental Representations, Warranties and Agreements.** I represent, warrant and agree that:

(1) Except as previously disclosed and acknowledged in writing to you, no hazardous substance has been, is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of hazardous substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

(2) Except as previously disclosed and acknowledged in writing to you, I and every tenant have been, are, and will remain in full compliance with any applicable environmental law.

(3) I shall immediately notify you if a release or threatened release of a hazardous substance occurs on, under or about the Property or there is a violation of any environmental law concerning the Property. In such an event, I shall take all necessary remedial action in accordance with any environmental law.

(4) I shall immediately notify you in writing as soon as I have reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any hazardous substance or the violation of any environmental law.

13. **AGREEMENTS.** Until the Loan and all related debts, liabilities and obligations are paid and discharged, I will comply with the following terms, unless you waive compliance in writing.

A. **Contractors and Suppliers.** I will ensure that the Project uses contractors, subcontractors and material suppliers that you regard as financially sound and qualified.

B. **Material Suppliers' Liens.** I will seek your prior approval before permitting the purchase and installation of any fixtures or personal property on the Property, when the material suppliers reserve title, the right to remove or repossess, or the right to consider such items as personal property after these are incorporated into the Improvements.

C. **Construction Liens.** I will not permit any Construction Lien relating to the Project to be filed, recorded or asserted against the Property, any appurtenant interest or right, any account created under this Agreement or any funds due to the Project's general contractor. Within 10 days after any Construction Liens are filed, recorded or asserted, I will diligently dispute their validity or promptly procure their discharge or release by providing security or indemnity sufficient to either release the Construction Lien or obtain title insurance insuring against all Construction Liens; you may act on my behalf in this manner when I fail to do so. You need not inquire into the validity or amount of these Construction Liens when settling, compromising, discharging or releasing these Construction Liens. I will pay all of your costs, expenses and reasonable attorney's fees for obtaining the discharge or release of these Construction Liens. You may opt to recover these items on demand from me, from any account created under this Agreement, or treat your payment as an advance and disbursement under the Promissory Note.

D. **Indemnity.** I will defend, indemnify and hold harmless you, your agents, successors and assigns for anything that anyone, other than you or your agents, do or fail to do under or about the Property. I will defend you against all claims, demand, cleanup expense and remediation requirements that result from these actions or omissions. This includes without limitation losses, punitive and compensatory damages, expenses, costs and attorneys' fees, and liability resulting from a finding that you, your agents, successors and assigns and I are engaged in a joint venture or partnership. My duty continues after the Loan's debts, liabilities and obligations are paid and discharged until your interest in the Property has ended.

E. **No Third Party Beneficiary Rights.** You and I do not intend to create any third-party beneficiary rights under this Agreement. No one other than we will have any right to obtain or compel a disbursement of the Loan's reserves or proceeds.

F. **Right to Assign.** I will not assign or attempt to assign my rights under this Agreement. An attempted assignment in violation of this agreement will not vest any rights in the purported assignee. You may assign, negotiate, pledge or transfer the Promissory Note, the Security Instrument and other Loan Documents to anyone to secure a Loan from them to you.

G. **Inspection.** I will help you or your consulting architect or other representatives to enter onto the Property and inspect the quality and progress of the Project's performance, labor and materials. I will promptly comply with your requirements to remove any dissatisfaction about the Project's quality or progress.

H. **Publicity.** I agree that you may display a sign at the construction site informing the public that you are the construction lender for the Project.

I. **Construction.** I will cause the Project's development, construction and equipping and any offsite development to be done diligently, continuously, on time, with high quality labor and materials and strictly by the Plans and Specifications.

J. **Change Orders.** The Plans and Specifications will not be materially changed until you give written approval of each material change.

K. **Fees and Expenses.** I will pay all reasonable and bona fide pre-closing, closing and post-closing fees, costs and expenses incurred by you incidental to this Loan.

L. **Lender's Actions Only for Lender's Protection.** I agree that you and your consulting architect are not obligated to inspect, supervise, prevent Construction Liens, or inform me about the Project's progress or performance. You and your consulting architect act for your protection when inspecting the Project, procuring sworn statements and waivers of liens, approving change orders and similar actions. You will incur no liability or obligation to me arising out of such inspection. An inspection for or by you does not waive any default and is not a representation that I have complied with this Agreement, any applicable laws or that the Project is free from defective materials or labor.

14. **DEFAULT.** I will be in default if any of the following occurs:

A. **Payments.** I fail to make a payment in full when due.

B. **Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me or any co-signer, endorser, surety or guarantor of this Agreement or any other obligations I have with you.

C. **Death or Incompetency.** I die or am declared legally incompetent.

D. **Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Agreement.

E. Other Documents. A default occurs under the terms of any other Loan Document.

F. Other Agreements. I am in default on any other debt or agreement I have with you.

G. Misrepresentation. I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

H. Judgment. I fail to satisfy or appeal any judgment against me.

I. Forfeiture. The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

J. Name Change. I change my name or assume an additional name without notifying you before making such a change.

K. Property Transfer. I transfer all or a substantial part of my money or property.

L. Property Value. You determine in good faith that the value of the Property has declined or is impaired.

M. Insecurity. You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Agreement or that the prospect for payment or performance of the Loan is impaired for any reason.

N. Deposits. I fail to promptly deposit any amounts that you require me to deposit with you.

O. Contractor's Insolvency. Any Project general contractor or subcontractor becomes insolvent, either because its liabilities exceed its assets or the Project's general contractor or subcontractor is unable to pay its debts as they become due, and I fail to procure a contract with a new contractor or subcontractor, reasonably satisfactory to you, within 30 days from the occurrence of this insolvency.

P. Commitment. Any governmental agency or another lender, committed to insuring the obligation secured by the Security Instrument or making an interim or permanent loan, fails or refuses to insure, purchase or fund the Loan from you by the time specified in any commitment, and I then fail to promptly pay to you all sums advanced by you under this Agreement.

Q. Encroachment. Any encroachment to the Property or to other property results from the existence or construction of the Improvements when this encroachment is not removed or corrected within 30 days.

R. Unsatisfactory Construction. You or your consulting architect determine that any construction work is not constructed according to the Plans and Specifications or the Construction Contract, communicate this failure to me, and I do not obtain correction of the unsatisfactory construction to the satisfaction of you and your consulting architect within 30 days after notification of this disapproval.

S. Interruption of Construction. Construction on the Improvements is delayed or discontinued for the shortest period provided under any performance or payment bonds or otherwise, 10 or more continuous days, to your consulting architect in its sole discretion concludes that the construction may not be completed on or before the Completion Date. The permissible delays for certain events may be increased from 10 to 15 continuous days for a single continuous period or 30 total non-continuous days or shorter periods required by the payment or performance bonds. These certain events permitting delay or discontinuance include: fire, earthquake, or other acts of God, acts of the public enemy, riot, insurrection, governmental regulation of the sale of material and supplies or the transportation thereof, or strikes directly affecting the work of construction, or shortages of material or labor resulting directly from governmental controls or diversions.

16. REMEDIES. After I default, and after you give any legally required notice and opportunity to cure the default, you may at your option do any one or more of the following.

A. Acceleration. You may make all or any part of the amount owing by the terms of this Agreement immediately due.

B. Sources. You may use any and all remedies you have under state or federal law or in any Loan Document.

C. Termination. You may terminate my right to obtain advances and may refuse to make any further extensions of credit.

D. Attachment. You may attach or garnish my wages or earnings.

E. Waiver. By choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

F. Take Possession of the Property. You may take possession of the Property to the extent and in a manner not otherwise prohibited by law.

G. Complete Project. You may, but are not obligated to, do anything you determine is necessary or desirable to complete the Project under the Plans and Specifications or as you otherwise consider appropriate. You may at your sole discretion advance funds to complete the Project even when all of these advances exceed the Loan's maximum total principal amount. You may discontinue completing the Project at any time without liability. I appoint and constitute you as my attorney-in-fact with full power and substitution in the Property to complete the Project's development, construction and equipping in my name. This power of attorney is irrevocable since it is a power coupled with an interest.

H. Lender's Right to Cure. You may, but are not obligated to, advance Loan reserves or proceeds to cure any default that may be cured by a payment of money.

I. Casualty. If all or part of the Improvements are damaged or destroyed by a casualty, I will proceed diligently to make settlement with the insurance company and cause the insurance proceeds to be deposited with you. If you decide that sufficient insurance proceeds and undisbursed Loan reserves and proceeds exist to complete the Project on or before the Completion Date, then you may disburse any insurance proceeds I deposit with you for the Project's restoration and completion. You need not make any disbursements of the Loan reserves and proceeds until such restoration is completed to your satisfaction. If you decide that insufficient insurance proceeds and undisbursed Loan reserves and proceeds exist to complete the Project on or before the Completion Date, then you will collect, retain and apply these insurance proceeds to reduce the Loan's principal balance.

18. COLLECTION EXPENSES AND ATTORNEYS' FEES. On or after Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Agreement or any other Loan Document. Expenses include, but are not limited to, court costs and other legal expenses, including any reasonable attorney's fees if allowed by law. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of the Promissory Note. All fees and expenses will be secured by the Property I have

granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

**17. APPLICABLE LAW.** This Agreement is governed by the laws of South Dakota, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**18. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on the Loan, or any number of us together, to collect the Loan. Extending the Loan or new obligations under the Loan, will not affect my duty under the Loan and I will still be obligated to pay the Loan. You may assign all or part of your rights or duties under this Agreement or the Loan Documents without my consent. If you assign this Agreement, all of my covenants, agreements, representations and warranties contained in this Agreement or the Loan Documents will benefit your successors and assigns. I may not assign this Agreement or any of my rights under it without your prior written consent. The duties of the Loan will bind my successors and assigns.

**19. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Agreement may not be amended or modified by oral agreement. No amendment or modification of this Agreement is effective unless made in writing and executed by you and me. This Agreement and the other Loan Documents are the complete and final expression of the understanding between you and me. If any provision of this Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**20. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Agreement.

**21. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. Notice to one Owner will be deemed to be notice to all Owners. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

**22. LIST OF EXHIBITS.** The following documents, that are checked, are incorporated by reference into this Agreement:

☒ Builder's Risk Insurance
☐ Construction Contract
☐ Copy of any Leases
☐ Disbursement Schedule
☒ Plans and Specifications
☒ Project Budget
☐ Subdivision Price List
☐ Surety Bonds
☐ Title Insurance Policy or Title Insurance Commitment or Interim Binder
☐ Abstract and Title Opinion
☐ Architect's Consent and Acknowledgment
☐ General Contractor's Consent and Acknowledgment
☒ Promissory Note
☐ Security Agreement
☐ Security Instrument
☐ Guaranty Agreement
☐ Affidavit Under Section 22 of the Lien Law of the State of New York

**23. SIGNATURES.** By signing under seal, I agree to the terms contained in this Agreement. I also acknowledge receipt of a copy of this Agreement.

BORROWER:

_Jill L McGuire_
Individually

OWNER:

_Jill L McGuire_
Individually

Jill L McGuire
South Dakota Construction Loan Agreement
SD/4XXXklara40037100008197022032306Y ©1996 Bankers Systems, Inc., St. Cloud, MN Express Initials

# Exhibit B



| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | NOTE DATE | INITIALS |
|---|---|---|---|---|
| 00082 | Jill L McGuire | | 05/26/06 | BCJ |
| NOTE AMOUNT | INDEX (w/Margin) | RATE | MATURITY DATE | LOAN PURPOSE |
| $288,700.00 | Wall Street Journal Prime plus 1.000% | 8.000% | 08/01/07 | Consumer |
| | | Creditor Use Only | | |

## PROMISSORY NOTE
### (Consumer - Closed End)
State of Florida's Documentary Stamp is not required on this Note.

**DATE AND PARTIES.** The date of this Promissory Note (Note) is May 26, 2006. The parties and their addresses are:

**LENDER:**
BANKFIRST
8200 West 78th Street Suite 170
Eden Prairie, Minnesota 55344
Telephone: (952) 833-6500

**BORROWER:**
JILL L MCGUIRE
1408 Blackburn Street
Wheaton, Illinois 60187

**1. DEFINITIONS.** As used in this Note, the terms have the following meanings:

A. **Pronouns.** The pronouns "I," "me," and "my" refer to each Borrower signing this Note, individually and together. "You" and "Your" refer to the Lender.

B. **Note.** Note refers to this document, and any extensions, renewals, modifications and substitutions of this Note.

C. **Loan.** Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures or notes, and this Note.

D. **Loan Documents.** Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

E. **Property.** Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.

F. **Percent.** Rates and rate change limitations are expressed as annualized percentages.

**2. PROMISE TO PAY.** For value received, I promise to pay you or your order, at your address, or at such other location as you may designate, the principal amount of $288,700.00 (Principal), or so much of this amount as may be advanced from time to time under the terms of this Note, plus interest from the date of disbursement, on the unpaid Principal balance until this Note matures or this obligation is accelerated.

All advances made will be made subject to the terms of a separate construction loan agreement and all other terms and conditions of this Loan.

**3. INTEREST.** Interest will accrue on the unpaid Principal balance of this Note at the rate of 8.000 percent (Interest Rate) until May 27, 2006, after which time it may change as described in the Variable Rate subsection.

A. **Post-Maturity Interest.** After maturity or acceleration, interest will accrue on the unpaid Principal balance of this Note at the Variable Interest Rate in effect from time to time, plus an additional 2.000 percent, until paid in full.

B. **Maximum Interest Amount.** Any amount assessed or collected as interest under the terms of this Note will be limited to the maximum lawful amount of interest allowed by state or federal law, whichever is greater. Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to me.

C. **Statutory Authority.** The amount assessed or collected on this Note is authorized by the South Dakota usury laws under S.D. Codified Laws Ann. §§ 54-3-13 and 54-3-14.

D. **Accrual.** Interest accrues using an Actual/365 days counting method.

E. **Variable Rate.** The interest rate may change during the term of this transaction.

(1) **Index.** Beginning with the first Change Date, the interest Rate will be based on the following index: The base rate on corporate loans posted by at least 75% of the nation's 30 largest banks known as the Wall Street Journal Prime Rate.

The Current Index is the most recent index figure available on each Change Date. You do not guaranty by selecting this Index, or the margin, that the Interest Rate on this Note will be the same rate you charge on any other loans or class of loans you make to me or other borrowers. If this index is no longer available, You will substitute a similar index. You will give me notice of your choice.

(2) **Change Date.** Each date on which the interest Rate may change is called a Change Date. The Interest Rate may change May 27, 2006 and daily thereafter.

(3) **Calculation Of Change.** On each Change Date you will calculate the Interest Rate, which will be the Current Index plus 1.000 percent. The result of this calculation will be rounded to the nearest .01 percent. Subject to any limitations, this will be the Interest

Jill L McGuire
South Dakota Promissory Note
SD/4XXXlane00837000031870320292004                    ©1996 Bankers Systems, Inc., St. Cloud, MN                    Initials _____

**EXHIBIT B**

Rate will the next Change Date. The new Interest Rate will become effective on each Change Date. The interest Rate and other charges on this Note will never exceed the highest rate or charge allowed by law for this Note.

(ii) Limitations. The Interest Rate changes are subject to the following limitations:

(a) Lifetime. The Interest Rate will never be less than 8.000 percent.

(iii) Effect Of Variable Rate. A change in the Interest Rate will have the following effect on the payments: The amount of scheduled payments and the amount of the final payment will change.

**4. ADDITIONAL CHARGES.** As additional consideration, I agree to pay, or have paid, these additional fees and charges.

A. Borrower/able Fees and Charges. The following fees are earned when collected and will not be refunded if I prepay this Note before the scheduled maturity date.

Wire Fee. A[n] Wire Fee fee of $35.00 payable from the loan proceeds.
Underwriting Fee. A[n] Underwriting Fee fee of $695.00 payable from the loan proceeds.
Title Insurance. A[n] Title Insurance fee of $1,568.50 payable from separate funds on or before today's date.
Title Examination. A[n] Title Examination fee of $65.00 payable from separate funds on or before today's date.
Tax Service Fee. A[n] Tax Service Fee fee of $88.00 payable from the loan proceeds.
Tax Search & Update Fee. A[n] Tax Search & Update Fee fee of $185.00 payable from separate funds on or before today's date.
State Tax Stamps. A[n] State Tax Stamps fee of $1,049.88 payable from separate funds on or before today's date.
Settlement Fee. A[n] Settlement Fee fee of $125.00 payable from separate funds on or before today's date.
Recording Fees. A[n] Recording Fees fee of $283.00 payable from separate funds on or before today's date.
Processing Fee. A[n] Processing Fee fee of $400.00 payable from separate funds on or before today's date.
Overnight Courier Fee. A[n] Overnight Courier Fee fee of $135.00 payable from separate funds on or before today's date.
Loan Origination. A[n] Loan Origination fee of $2,997.00 payable from the loan proceeds.
Lender's Inspection - Construction Loan. A[n] Lender's Inspection - Construction Loan fee of $300.00 payable from the loan proceeds.
Flood Certification. A[n] Flood Certification fee of $18.00 payable from the loan proceeds.
FL Form 9. A[n] FL Form 9 fee of $133.33 payable from separate funds on or before today's date.
Document Preparation. A[n] Document Preparation fee of $250.00 payable from separate funds on or before today's date.
Document Preparation. A[n] Document Preparation fee of $88.00 payable from separate funds on or before today's date.
Credit Report Fee. A[n] Credit Report Fee fee of $16.59 payable from separate funds on or before today's date.
City/County Tax Stamps. A[n] City/County Tax Stamps fee of $898.40 payable from separate funds on or before today's date.
Broker Fee. A[n] Broker Fee fee of $350.00 payable from separate funds on or before today's date.
Appraisal. A[n] Appraisal fee of $300.00 payable from separate funds on or before today's date.
Abs B.1 End. A[n] Abs B.1 End fee of $55.00 payable from separate funds on or before today's date.
Abstract or title search. A[n] Abstract or title search fee of $65.00 payable from separate funds on or before today's date.

**5. REMEDIAL CHARGES.** In addition to interest or other finance charges, I agree that I will pay these additional fees based on my method and pattern of payment. Additional remedial charges may be described elsewhere in this Note.

A. Late Charge. If a payment is more than 15 days late, I will be charged 5.000 percent of the Amount of Payment. I will pay this late charge promptly but only once for each late payment.

**6. PURCHASE MONEY LOAN.** You may include the name of the seller on the check or draft for this Note.

**7. PAYMENT.** I agree to pay this Note in installments of accrued interest beginning July 1, 2006, and then on the 1st day of each month thereafter. I agree to pay the entire unpaid Principal and any accrued but unpaid interest on June 1, 2007. The final payment includes an amount for interest reserve and may need to be adjusted when the payment becomes due and payable.

Payments will be rounded to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

Each payment I make on this Note will be applied first to any charges that I owe other than principal and interest than is due, and finally to principal that is due. No late charge will be assessed on any payment when the only delinquency is due to late fees assessed on earlier payments and the payment is otherwise a full payment. You may change how payments are applied in your sole discretion without notice to me. The actual amount of my final payment will depend on my payment record.

**8. PREPAYMENT.** I may prepay this Note in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

**9. LOAN PURPOSE.** The purpose of this Loan is to provide funds for construction of a single family residence.

**10. SECURITY.** The Loan is secured by separate security instruments prepared together with this Note as follows:

| Document Name | Parties to Document |
|---|---|
| Mortgage - 101 Terry Avenue North | Jill L MacGuire |

**11. DEFAULT.** I will be in default if any of the following occur:

A. Payments. I fail to make a payment in full when due.

B. Insolvency or Bankruptcy. The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or



the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me or any co-signer, endorser, surety or guarantor of this Note or any other obligation I have with you.

C. Death or Incompetency. I die or am declared legally incompetent.

D. Failure to Perform. I fail to perform any condition or to keep any promise or covenant of this Note.

E. Other Documents. A default occurs under the terms of any other Loan Document.

F. Other Agreements. I am in default on any other debt or agreement I have with you.

G. Misrepresentation. I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

H. Judgment. I fail to satisfy or appeal any judgment against me.

I. Forfeiture. The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

J. Name Change. I change my name or assume an additional name without notifying you before making such a change.

K. Property Transfer. I transfer all or a substantial part of my money or property.

L. Property Value. You determine in good faith that the value of the Property has declined or is impaired.

M. Insecurity. You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Note or that the prospect for payment or performance of the Loan is impaired for any reason.

**12. DUE ON SALE OR ENCUMBRANCE.** You may, at your option, declare the entire balance of this Note to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

**13. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

A. Additional Waivers By Borrower. In addition, I, and any party to this Note and Loan, to the extent permitted by law, consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to this Note.

(1) You may renew or extend payments on this Note, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property securing this Note.

(4) You, or any institution participating in this Note, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of this Note to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that any of us signing this Note as a Borrower is authorized to modify the terms of this Note or any instrument securing, guarantying or relating to this Note.

B. No Waiver By Lender. Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in this Note, or any other Loan Document, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

**14. REMEDIES.** After I default, and after you give any legally required notice and opportunity to cure the default, you may at your option do any one or more of the following.

A. Acceleration. You may make all or any part of the amount owing by the terms of this Note immediately due.

B. Sources. You may use any and all remedies you have under state or federal law or in any Loan Document.

C. Insurance Benefits. You may make a claim for any and all insurance benefits or refunds that may be available on my default.

D. Payments Made On My Behalf. Amounts advanced on my behalf will be immediately due and may be added to the balance owing under the terms of this Note, and accrue interest at the highest post-maturity interest rate.

E. Termination. You may terminate my right to obtain advances and may refuse to make any further extensions of credit.

F. Attachment. You may attach or garnish my wages or earnings.

G. Set-Off. You may use the right of set-off. This means you may set-off any amount due and payable under the terms of this Note against any right I have to receive money from you.

My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of this Note" means the total amount to which you are entitled to demand payment under the terms of this Note at the time you set-off.

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay this Note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.

Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because your set-off against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

H. Waiver. Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

Joe L. McGuirt
South Dakota Residence Note
SD/4XXAmerica0397100006147C232842006N          ©1996 Bankers Systems, Inc., St. Cloud, MN 56301          Initials





**15. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Note or any other Loan Document. Expenses include, but are not limited to, court costs and other legal expenses, including any reasonable attorney's fees if allowed by law. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of this Note. All fees and expenses will be secured by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

**16. COMMISSIONS.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

**17. WARRANTIES AND REPRESENTATIONS.** I have the right and authority to enter into this Note. The execution and delivery of this Note will not violate any agreement governing me or to which I am a party.

**18. INSURANCE.** I agree to obtain the insurance described in this Loan Agreement.

A. **Property Insurance.** I will insure or retain insurance coverage on the Property and abide by the insurance requirements of any security instrument securing the Loan.

B. **Flood Insurance.** Flood insurance is not required at this time. It may be required in the future should the property be included in an updated flood plain map. If required in the future, I may obtain flood insurance from anyone I want that is reasonably acceptable to you.

C. **Insurance Warranties.** I agree to purchase any insurance coverages that are required, in the amounts you require, as described in this or any other documents I sign for this Loan. I will provide you with continuing proof of coverage. I will buy or provide insurance from a firm licensed to do business in the State where the Property is located. If I buy or provide the insurance from someone other than you, the firm will be reasonably acceptable to you. I will have the insurance company name you as loss payee on any insurance policy. You will apply the insurance proceeds toward what I owe you on the outstanding balance. I agree that if the insurance proceeds do not cover the amounts I still owe you, I will pay the difference. I will keep the insurance until this Agreement and all debts secured by this Agreement are paid. If I want to buy the insurance from you, I have signed a separate statement agreeing to this purchase.

**19. APPLICABLE LAW.** This Note is governed by the laws of South Dakota, the United States of America, and to the extent required by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**20. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on the Loan, or any number of us together, to collect the Loan or new obligations under the Loan, will not affect my duty under the Loan and I will still be obligated to pay the Loan. This Note shall inure to the benefit of and be enforceable by you and your successors and assigns and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

**21. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Note may not be amended or modified by oral agreement. No amendment or modification of this Note is effective unless made in writing and executed by you and me. This Note and the other Loan Documents are the complete and final expression of the agreement. If any provision of this Note is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**22. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Note.

**23. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

**24. CREDIT INFORMATION.** I agree to supply you with whatever information you reasonably request. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

**25. ERRORS AND OMISSIONS.** I agree, if requested by you, to fully cooperate in the correction, if necessary, in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between you and me. I agree to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days.

**26. SIGNATURES.** By signing under seal, I agree to the terms contained in this Note. I also acknowledge receipt of a copy of this Note.

BORROWER:

X _____

Individually

Jill L. McGuire
South Dakota Promissory Note
SD/4XXXXfelton009271000081670130462306N

©1996 Bankers Systems, Inc., St. Cloud, MN          Initials _____

# Exhibit C

# STAMATAKIS & THALJI, P.L.

## CONSUMER JUSTICE ATTORNEYS

**AREAS OF PRACTICE**

- Personal Injury
- Wrongful Death
- Bankruptcy
- Real Estate
- Business Law
- Criminal Defense
- Probate
- Family Law
- Immigration

June 12, 2007

Certified Mail # 7006 2760 0000 4393 9222
Return Receipt Requested

Jill McGuire
1406 Blackburn Street
Wheston, IL 60187

RE:  Notice of Mortgage Note Default
Loan#: 90082
Property Address: 101 Terry Avenue North, Lehigh Acres, FL 33971

Dear Mrs. McGuire:

THIS LAW FIRM MAY BE DEEMED A 'DEBT COLLECTOR' UNDER THE FAIR DEBT COLLECTION PRACTICES ACT. ANY INFORMATION OBTAINED WILL BE USED FOR THE PURPOSE OF COLLECTING A DEBT.

If you have previously been discharged from a Chapter 7 Bankruptcy in conjunction with this property and did not sign a reaffirmation agreement, this letter is not an attempt to collect a debt from you personally. This letter serves as a notice of the upcoming foreclosure as required by either your security instrument, Florida Law, and/or the Federal Fair Debt Collection Practices Act.

Please be advised that the undersigned represents BankFirst in regards to the Note and Mortgage executed dated May 26, 2006. According to our client's records, the above-referenced Mortgage and Mortgage Note are in default. Your payment for June 1, 2007 has not been made. Unless the payments on your loan can be brought current by July 12, 2007, it will become necessary to accelerate your Mortgage Note and pursue the remedies provided for in your Mortgage. Below is a list of the funds required to bring your loan current and the dates they were/are due.

| | |
|---|---|
| Principal Balance | $125,163.57 |
| Interest | $1,401.38 |
| Late Fees (5% of balance) | $6,328.75 |
| Certified Mail | $5.21 |
| Attorney's Fees | $150.00 |

TOTAL AMOUNT DUE ON JULY 12, 2007          $133,048.91          **EXHIBIT C**

13902 N. Dale Mabry Hwy., Suite 300 • Tampa, Florida 33618 • Telephone: 813-282-9330 • Fax: 813.282.8648

**MyInjury.com**

The monies must be in the form of a cashier's check, money order or certified funds made payable to the Trust Account of Stamatakis & Thalji, P.L., and submitted to the firm's street address listed above. Any amount less than the total amount due may be returned to you, the loan accelerated, and foreclosure proceedings initiated. If the above mentioned breach is not cured on or before the date specified in this notice, BankFirst will declare all sums secured by the above-referenced Mortgage and Mortgage Note due and payable as of said date and will exercise any remedies permitted by applicable law. In accordance with the Housing and Community Development Act of 1987, home ownership counseling is available from non-profit organizations. If you are in need of financial advice, you may contact a HUD-approved housing counseling agency. These agencies provide experienced home ownership counseling at no charge to you. For the agency in your area, call (800) 569-4287.

**\*IMPORTANT IF TENANTS OCCUPY THE PROPERTY\***
If applicable, pursuant to applicable assignment of rents provision in the note and mortgage, and Florida Statutes Section 697.07, BankFirst is entitled to an assignment of rents upon the above mentioned default. By law, BankFirst hereby demands all rents due and/or in your possession upon receipt of this letter in addition to all rental income collected thereafter.

Sincerely,

Scott D. Stamatakis,
Attorney at Law

### NOTICE REQUIRED BY THE FAIR DEBT COLLECTION PRACTICES ACT, (THE ACT) 15 U.S.C, SECTION 1601 AS AMENDED

1.     The amount of the debt due under the Mortgage and Mortgage Note on July 12, 2007 is $133,048.91, and set forth in more detail on page number one (1).

2.     BankFirst is the creditor to whom the debt is owed.  The undersigned law firm represents the interests of BankFirst.

3.     The debt described in this letter will be assumed to be valid by the undersigned law firm unless you, within thirty days after the receipt of this notice, dispute in writing the validity of the debt or some portion thereof.

4.     If the you notify the undersigned law firm in writing within thirty (30) days of the receipt of this notice that the debt or any portion thereof is disputed, the undersigned law firm will obtain a verification of the debt and a copy of the verification will be mailed to you by the undersigned law firm.

5.     If you notify the undersigned law firm in writing within thirty days after the receipt of this notice, the undersigned law firm will provide you with the name and address of the original creditor, if different from the current creditor.

6.     The Fair Debt Collection Practices Act does not require me, the 'debt collector', to wait until the end of the thirty (30) day period before suing you, the consumer, to collect this debt. If however, you request proof of the debt, or the name and address of the original creditor, within the thirty (30) day period, which begins with your receipt of this letter, the law requires me to suspend my efforts, through litigation or otherwise, to collect the debt until I mail the requested information to you.

7.     Written requests should be addressed to Scott D. Stamatakis, Stamatakis & Thalji, P.L., P.O. Box 341499, Tampa, Florida 33694.


                        Stamatakis & Thalji, P.L.
                        Attorneys for BankFirst


                        By:
                        Scott D. Stamatakis, Attorney at Law

# Exhibit D



Fafinski Mark & Johnson

Fafinski Mark & Johnson, P.A.
Attorneys At Law
Flagship Corporate Center
775 Prairie Center Drive, Suite 400, Eden Prairie, MN 55344
Telephone 952.995.9500  Facsimile 952.995.9577  Website www.fmjlaw.com

March 7, 2008

## NOTICE REQUIRED BY THE FAIR DEBT COLLECTIONS PRACTICES ACT 15 U.S.C. SECTION 1692, ET. SEQ.

**VIA FIRST CLASS AND CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Jill L. McGuire
1406 Blackburn Street
Wheaton, Illinois 60187

Re:     **NOTICE OF DEFAULT**
       **Note and Mortgage Dated May 26, 2006**

Dear Ms. McGuire:

On May 26, 2006, Jill McGuire ("Borrower") executed and delivered to BankFirst a promissory note in the original principal amount of $299,700.00 ("Note"). On May 26, 2006, the Borrower also executed a mortgage, which secures the Note ("Mortgage").

The information provided to you in this letter is provided in accordance with the Fair Debt Collections Practices Act. This letter supersedes all prior correspondence and billing statements delivered to you.

1.     You are hereby notified that under the terms of the Note, you were required to pay the entire unpaid principal and any accrued but unpaid interest owed under the Note in full on June 1, 2007. You have failed to pay the entire indebtedness owed under the Note by June 1, 2007, and therefore, you are in default under the terms of the Note and Mortgage. As of March 4, 2008, a total amount of $136,323.40 is currently past-due under the Note, comprised of principal in the amount of $125,163.57, and past-due interest in the amount of $11,159.83. This amount does not include attorneys' fees and costs, which BankFirst is entitled to.

2.     You are hereby notified that under the terms of the Note, BankFirst is entitled to an increased interest rate following maturity of the Note, and BankFirst is entitled to a five percent late charge if any payment is more than fifteen days late.

**EXHIBIT D**

Jill L. McGuire
March 7, 2008
Page 2

3.  These defaults allow BankFirst to immediately commence an action for a judgment for the full amount due and owing, commence actions to foreclose your Mortgage, or take any other actions allowed by law and recover attorneys' fees. You are further advised that you have the right to bring a court action to assert the nonexistence of a default or any other defense you may have.

4.  The creditor to whom debt is owed is BankFirst, a state chartered bank.

This letter serves as written notification of the above-enumerated defaults ("Defaults"). This notice is as of this date alone. This list of Defaults is not exclusive, and BankFirst expressly reserves its right to supplement and amend this list of Defaults. In addition, BankFirst expressly reserves its right to declare additional defaults as they occur and reserves its right to declare any additional defaults that may exist as of the date of this notice. Please be further advised that this notice is not, and is not intended to be, a waiver or amendment of any of BankFirst's rights with respect to any Defaults including the right to amend this notice or notify you of additional defaults.

You are required to pay to BankFirst all past-due amounts under the Note. Additionally, you are responsible for all of BankFirst's costs and fees associated with this Default, including, but not limited to, attorneys' fees. Please call me within 30 days of the date of this letter to arrange for the exact payoff as of the day you intend to make payment and to make arrangements for such payment. Payment should be made by delivering a Cashier's Check to Marshall BankFirst Corporation, 225 South Sixth Street, Suite 2900, Minneapolis, MN 55402, Attn: Matthew Sawicki.

**If BankFirst does not receive full payment within 30 days of the date of this letter, BankFirst will exercise the legal remedies available to it under the Note and Mortgage, including, but not limited to: (1) seeking judgment against you for the full principal amount due under the Note, plus interest; and (2) in its discretion, foreclose the Mortgage that secures repayment of the Note. Additionally, BankFirst will seek to recover its costs, fees, and attorneys' fees associated with enforcing its rights and remedies under the Note and Mortgage.**

**UNLESS YOU NOTIFY US WITHIN 30 DAYS AFTER RECEIPT OF THIS LETTER THAT THE VALIDITY OF THIS DEBT, OR ANY PORTION OF IT, IS DISPUTED, WE WILL ASSUME THAT THE DEBT IS VALID. IF YOU DO NOTIFY US IN WRITING OF A DISPUTE, WE WILL OBTAIN VERIFICATION OF THE DEBT AND MAIL IT TO YOU. ALSO, UPON YOUR WRITTEN REQUEST WITHIN 30 DAYS OF THE DAY YOU RECEIVE THIS LETTER, WE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR IF DIFFERENT FROM THE CURRENT CREDITOR.**

**THIS COMMUNICATION IS FROM A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

Jill L. McGuire
March 7, 2008
Page 3

NOTWITHSTANDING THE CURE PERIOD, LENDER RESERVES THE RIGHT TO SEEK
EMERGENCY RELIEF FROM THE COURT AT ANY TIME, INCLUDING THE RIGHT TO
PRESERVE AND PROTECT ITS COLLATERAL.

ALTHOUGH THE LENDER MAY HAVE ACCEPTED LATE PAYMENTS IN THE PAST OR
MAY HAVE WAIVED STRICT COMPLIANCE WITH THE LOAN DOCUMENTS, THE
LENDER IS HEREBY REQUIRING STRICT COMPLIANCE BY THE BORROWERS OF THE
TERMS OF THIS LETTER AND OF THE LOAN DOCUMENTS IN ORDER TO AVERT
FURTHER ACTION BY THE LENDER WITH REGARD TO THE ABOVE-REFERENCED
COLLATERAL, TOGETHER WITH SUCH OTHER LEGAL ACTION THE LENDER MAY
DEEM APPROPRIATE, INCLUDING A LEGAL ACTION AGAINST THE BORROWERS
FOR ANY AMOUNTS DUE AND PAYABLE BY THE BORROWERS UNDER THE ABOVE-
REFERENCED NOTES, WHICH AMOUNTS MAY INCLUDE BUT NOT BE LIMITED TO
THE LENDER'S ATTORNEYS' FEES, COSTS AND OTHER CHARGES AND FEES
ALLOWED BY THE LOAN DOCUMENTS AND THE LAW.

Sincerely,

Jeffrey A. Scott

JAS:mar